NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN PRECOIS, et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>WILLIAMS DILOLLO, et al.,<br><br>    *Defendants*. | Civil Action No. 13-6279<br><br>OPINION |

This matter comes before the Court by way of Defendants Alexander Blanco, Louis Demondo, and William Dilollo's ("Defendants") motions for summary judgment. Dkt. Nos. 54, 56, 59. For the reasons stated below, the Court grants in part and denies in part the motions.

**I.  BACKGROUND**

This case concerns an altercation in the aftermath of Hurricane Sandy between several individuals looking to buy gasoline and various police officers of the City of Elizabeth who were trying to maintain order.

On November 1, 2012, Officers William Dilollo and Louis Demondo were sent to a gas station in Elizabeth, New Jersey. Blanco Statement ¶ 2, Dkt. No. 54-1.[1] Hurricane Sandy hit New Jersey days earlier, and there were reports of disorderly groups fighting over gas. Id. Hundreds of people were waiting in line for gas at the station when the officers arrived. Id. ¶ 3. Several

---

[1] All disputed facts are construed in Plaintiffs' favor, as the non-moving parties. Each Defendant provided a statement of undisputed material facts in their motion. See Dkt. Nos. 54-1, 56-1, 59-3. Plaintiffs provided no responsive statement, so these facts are deemed admitted for the purposes of this motion. See L. Civ. R. 56.1(a); Schneider v. Shah, No. 11-2266, 2012 WL 1161584, at *3 (D.N.J. Apr. 9, 2012).

1

people were out of their vehicles arguing with one another. Demondo Statement ¶ 12, Dkt. No. 56-1.

Plaintiff Jean Precois, with his sister-in-law Sojey Mofica, his son A.M., and others, drove to the gas station to buy a gas can. Blanco Statement ¶ 4. Mr. Precois parked at the gas station, and when an officer told him he "couldn't park there," he replied, "I'm going to the store." Demondo Statement ¶ 63. After Mr. Precois asked for a gas can in the store, he was advised that they had none. He then went to the gas pumps to talk to an attendant. Id. ¶ 5. Officer Dilollo ordered Mr. Precois to return to his car because the officers were trying to maintain order at the station. Id. ¶ 6. Mr. Precois argued with Officer Dilollo until his wife grabbed him and escorted him back to his vehicle. Id. ¶ 7. Officer Dilollo called him a punk. Mr. Precois rolled down his window and told Officer Dilollo to "call me a punk next time you're out of uniform. Call me a punk." Id. ¶ 75. Mr. Precois admits that he would show he was not a punk "by fighting, absolutely." Id. ¶ 78; Pls.' Sur-Reply Ex. 1, Precois Dep. Tr. 66:11. He then drove away. Blanco Statement ¶¶ 8-9. Officer Dilollo transmitted over the radio that he was trying to stop a car that had just taken off on him. Demondo Statement ¶ 96. Officers Dilollo and Demondo then pursued Mr. Precois in their vehicle and stopped him about a half mile away from the gas station. Id. ¶ 10. Two other officers, Alexander Blanco and Francisco Croban, arrived on the scene in response to the earlier radio call. Id. ¶ 11. Officers Dilollo and Demondo then arrested Mr. Precois. Mr. Precois' car was initially locked. Id. ¶¶ 88-89, 99. The officers demanded Mr. Precois unlock it, and after he did so, Officers Demondo and Dilollo pulled Mr. Precois out of the car and threw him on the ground. Id. ¶¶ 101, 108-109. Mr. Precois caught his fall by putting his hands out. Id. ¶ 109. He was then handcuffed and an officer stepped on his head or neck to hold him down. Id. ¶ 111; Pls.' Opp. Ex. 3, Precois Interog. Answers No. 2, Dkt. No. 60-1. Officers Demondo or Dilollo

may have also stepped on his back to hold him down.  Mr. Precois testified that his face was scratched but didn't bleed.  Pls.' Sur-Reply Ex. 1, Precois Dep. at 114:18, Dkt. No. 75-1.  He was charged with Obstruction, N.J. Stat. Ann. § 2C:29-1a, and Terroristic Threats, N.J. Stat. Ann. § 2C:12-3.  Id. ¶ 12.  He went to the emergency room three days later with complaints of back pain.  Dilollo Mot. Summ. J. Ex. D., Precois' Medical Records, Dkt. No. 59-4.  The emergency room noted superficial healing abrasion with no bruising on Mr. Precois' left cheek and then released him.  Id.

His fifteen-year-old son, A.M., was also arrested for obstruction of justice.  A.M. exited the car against the orders of the police and started yelling at the police to leave Mr. Precois alone.  Blanco Statement ¶ 13; Demondo Statement ¶ 112-14.  Officer Blanco then intervened and told A.M. to stay outside of his vehicle.  A.M. tried to get back into the car.  Officer Blanco forcibly took him from the vehicle and placed him under arrest.  Demondo Statement ¶¶ 103-06; Blanco Statement ¶ 15.  A.M. claims he was hit with a baton, thrown to the ground, and beaten and kicked.  Demondo Statement ¶ 169.  He testified that he had injuries to his right arm, which was later put into a sling, and that his lower back was hurting.  A.M. Dep. Tr. 53:2, Dkt. No. 56-12.  He was charged with obstruction.

Sojey Mojica was also arrested for obstruction of justice after she tried to prevent A.M. from being removed from the car.  Blanco Statement ¶¶ 16-17.  She claims she was struck with a baton on the right arm when she reached out to stop the officer's baton from hitting A.M.  Demondo Statement ¶ 127.  She was then handcuffed and patted down by a female police officer and driven to the police station.  Id. ¶ 128.  Ms. Mojica did not seek any medical treatment, though she claims she had pain on her right wrist for about two to three weeks.  Dilollo Mot. Summ. J. Ex. G., Mojica's Medical Records, Dkt. No. 59-4.

The case against Mr. Precois and Ms. Mojica was heard in municipal court in Elizabeth, where it was dismissed with a stipulation of probable cause during a hearing attended by Mr. Precois and Ms. Mojica.  Dilollo Mot. Summ. J. Ex. N., Mun. Ct. Hr'g Tr. 3:23-5:7 (Feb. 5, 2013), Dkt. No. 59-5; Precois Dep. Tr. 89:14-92:1.  The same lawyer represented both Mr. Precois and Ms. Mojica and explained to them what a stipulation to probable cause meant.  Precois Dep. Tr. 90:14-91:4.  Their lawyer stipulated that the police had probable cause.  Mun. Ct. Hr'g Tr. 4:23.

A.M. attending a single hearing in juvenile court, where he did not have an attorney.  A.M. Dep. Tr. 61:16-64:21.  He was not convicted of any crime and he did not admit or stipulate to probable cause.  Id.

On October 4, 2013, Plaintiffs Jean Precois, Sojey Mojica, and Elizabeth Mojica (on behalf of A.M.) filed their complaint in New Jersey state court.  The Complaint was removed to this Court on October 22, 2013.  Compl., Dkt. No. 1-1.  Plaintiffs' filed an Amended Complaint on February 3, 2014.  Am. Compl., Dkt. No. 14.  The Amended Complaint contains the following independent counts: (1) unconstitutional search, (2) false arrest, (3) excessive force, and (4) failure to train by the City of Elizabeth.[2]  Am. Compl. at 2-8.

Following discovery, all Defendants filed separate summary judgment motions.  Dkt. Nos. 52-54, 56, 59.  Plaintiffs dismissed the action as to two defendants—the City of Elizabeth and Officer Francisco Croban—and filed a single opposition brief to all the pending summary judgment motions.  Dkt. Nos. 60, 62-64.  The remaining defendants replied.  Dkt. Nos. 66-67, 75.  Thus, the only remaining defendants are Officers Dilollo, Demondo, and Blanco.

## II. LEGAL STANDARD

### a. Summary Judgment

---

[2] Count 4 need not be discussed as Plaintiffs have dismissed the City of Elizabeth.

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

**b. Qualified Immunity**

Qualified immunity precludes liability for public officials acting pursuant to their authority when they do "not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, as here,[3] a government actor is not liable if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. Anderson v. Creighton, 483 U.S. 635 (1987). The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's conduct. Malley v. Briggs, 475 U.S. 335 (1986). Specifically, "qualified immunity hinges on whether a reasonable officer in the defendant's position at the relevant time could have believed in light of what was decided case law that his

---

[3] No party disputes that the right to be free of excessive force is clearly established, as is the requirement that officers must have probable cause in order to arrest.

conduct was lawful." Geist v. Ammary, 617 F. App'x 182, 185 (3d Cir. 2015) (quotation marks and brackets omitted).

### III. ANALYSIS

#### A. Probable Cause (Counts 1 and 2)

Plaintiffs' claims concerning unconstitutional search and false arrest (Counts 1 and 2) both turn on a single question: did the officers have probable cause? If they did, there is no violation here. See Hill v. California, 401 U.S. 797, 802-03 (1971) (arrest and search conducted with probable cause is not wrongful); Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000) (same). If they did not, these claims may proceed.

Probable cause is determined by "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). This standard "requires more than mere suspicion . . . ." Orsati v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Plaintiff Jean Precois was charged for two crimes: obstruction of justice and terroristic threats. N.J. Stat. Ann. § 2C:29-1(a) provides that a person commits obstruction of justice

> if he purposely obstructs, impairs or perverts the administration of law . . . or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.

N.J. Stat. Ann. § 2C:12-3 provides that a person commits terroristic threats

> if he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience . . . .

6

Sojey Mojica and A.M. were each charged with obstruction.

While probable cause is generally a question for the jury, a Court may grant summary judgment if the evidence, viewed most favorably to Plaintiff, reasonably would not support a factual finding of no probable cause. See Quinn v. Cintron, No. 14-4367, 2015 WL 6917565, at *1 (3d Cir. 2015); Montgomery v. DeSimone, 159 F.3d. 120, 124 (3d Cir. 1998); Stowlinski v. Penny Packer, 772 F. Supp. 2d 626, 639 (D.N.J. 2011).

**1. Jean Precois**

At a hearing in municipal court, Mr. Precois, through his attorney, agreed to a stipulation of probable cause as to the crimes of terroristic threats and obstruction. He admits that his attorney explained to him what that meant. Mr. Precois was present during the hearing and did not voice any objection. He now argues that this agreement is null because there is no proof that it was made in exchange for the dismissal he received, and if it was in exchange, then it was a violation of ethics rules for prosecutors.

Plaintiffs provide no evidence that the stipulation of probable cause was involuntary or otherwise abusive. Plaintiffs cite Town of Newton v. Rumery, 107 S. Ct. 1187, 1195 (1987), for the proposition that whoever relies upon a stipulation of probable cause has the burden to prove that the stipulation is neither involuntary nor the product of an abuse of the criminal process. However, the page cited from Town of Newton provides no support whatsoever for that claim. The municipal court hearing transcript and Mr. Precois' deposition do establish the existence of a voluntary stipulation of probable cause, relayed to the municipal court judge as part of the dismissal. Plaintiffs present no evidence placing that stipulation in question.

Furthermore, Mr. Precois did threaten to commit a crime of violence against a police officer by threatening to fight him when he was out of uniform. Thus, "it was objectively reasonable for

7

the officers to believe that probable cause existed at the time of the arrest." Johnson ex rel. Johnson v. City of Pleasantville, No. 05-4258, 2007 WL 1412271, at *4 (D.N.J. May 14, 2007). Because Mr. Precois voluntarily stipulated that there was probable cause for this arrest and because it was objectively reasonable for the officers to believe they had probable cause to arrest Mr. Precois, his claims of unconstitutional search and false arrest fail.

### 2. Sojey Mojica

Like Mr. Precois, Ms. Mojica stipulated that the officers had probable cause to arrest her. She was represented by the same attorney. Precois Dep. Tr. 90:14-91:4. Her attorney provided a stipulation of probable cause at the same hearing. Mun. Ct. Hr'g Tr. 4:23. She did not object. Additionally, Ms. Mojica did reach out to physically interfere with the officers' arrest of A.M. As such, the officers could have an objectively reasonable belief that probable cause existed to arrest her for obstruction. Ms. Mojica stipulated that there was probable cause and the facts support that stipulation. Her claims for false arrest and unconstitutional search may not proceed.

### 3. A.M.

A.M. did not stipulate to probable cause. The Court therefore considers whether the evidence, viewed most favorably to Plaintiff, reasonably would not support a factual finding of no probable cause. See Quinn, 2015 WL 6917565, at *1. Conducting this analysis, the Court denies summary judgment on these counts as to A.M.

In State v. Williams, 192 N.J. 1, 11 (2007), the New Jersey Supreme Court held that it is obstruction to take flight after a police officer commands a person to stop. Similarly, in Young v. City of Wildwood, 323 Fed. App'x 99, 102 (3d Cir. 2009), a defendant intentionally would not allow officers to fingerprint him, smearing the ink four times in a row. This created probable cause for obstruction. Johnson v. City of Pleasantville, No 05-4258, 2007 WL 1412271 (D.N.J. 2007),

describes another circumstance where failure to follow orders constituted obstruction. In Johnson, an officer was arresting an individual and a crowd of people surrounded and closed in on the officer in a way he believed was threatening. Id. at * 1. The officer told the members of the crowd to move back several times, but they did not. The crowd came close enough that the officer had to physically push back. Id. After one woman came close enough to be pushed back again, the officer arrested her for obstruction of justice. Id. The court found that the officer had probable cause to arrest her because she repeatedly refused to obey orders to move back in a threatening situation and she eventually had to be physically pushed back. Id. at *4.

Each of these cases has a common denominator: physical interference with lawful police conduct. There is no undisputed physical interference or intimidation here. While officers were arresting A.M.'s father, the officers ordered A.M. to stay in his vehicle. A.M. got out of the car and began to yell at the officers that his father was innocent. Then, after the officers ordered him to stay out of the car, A.M. went back into it. Unlike in Johnson, the police did not have to push A.M. back in order to secure the scene and continue the arrest. There is no undisputed serious risk of physical interference. Nor was A.M. as uncooperative as the defendant in Johnson; the officers only told A.M. to stay in the vehicle once, while the individual in Johnson was repeatedly told to get back. A.M. getting out of the car, without more, would not cause a prudent officer to believe that he had probable cause to arrest A.M. for obstruction. The officers do not testify that they were intimidated by the fifteen-year-old. Nor do any undisputed facts show that A.M. attempted to intimidate them; simply yelling that his father was innocent is not unlawful intimidation. Therefore, on the undisputed facts the Court cannot find that the officers had probable cause to arrest A.M.

The Court therefore grants summary judgment in Defendants' favor against Plaintiffs Jean Precois and Sojey Mojica on their false arrest and unconstitutional search claims (Counts 1-2). Plaintiff A.M.'s claims of false arrest and unconstitutional search may proceed.

### B. Excessive Force (Count 3)

Plaintiffs' third count is for excessive force. This count survives summary judgment.

"In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test." Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). When determining whether an officer's use of force was objectively reasonable, the Court considers: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004) (citing Graham, 490 U.S. at 396). The Court may also consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Kopec, 361 F.3d at 777 (citation omitted).

#### 1. Jean Precois

Mr. Precois' excessive force claim is based on the following facts. Officers Demondo and Dilollo pulled him out of his vehicle by the chest. They threw him to the ground. One of them stepped on his head or neck, while other officers may have stepped on his body. This occurred over a period of several minutes.

Applying Santini and Kopec, the Court is satisfied that summary judgment on the excessive force claims should be denied. The crime at issue for Mr. Precois, a threat to fight a police officer

when he was out of uniform, was not particularly severe. Mr. Precois did not resist arrest or attempt to flee. There are no facts indicating that Mr. Precois was violent or dangerous at the time of the arrest. Saying "call me a punk next time you're out of uniform" does not alone render an individual especially dangerous, and any such danger was lessened after the altercation had ended and Mr. Precois drove away. The timing of the alleged abuse also does not indicate a snap judgment made of necessity. The police officers are alleged to have stepped on Mr. Precois for several minutes. The action did occur while effectuating an arrest, which militates in favor of the police. There was no indication that Mr. Precois or any of his companions were armed. During the alleged misconduct, there were four police officers and at most two others—Mr. Precois and A.M.—out of the car at any given time, which further decreases the need for force to maintain control of the situation.

There is also no evidence that Mr. Precois was permanently injured, but that does not preclude excessive force from being found here. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007). Mr. Precois complained of back pain during his trip to the emergency room three days later. He also had scratches on his face.

Given these facts, a reasonable juror could find that throwing Mr. Precois to the ground, stepping on his head or neck, and stepping on his body for several minutes was not objectively reasonable. Mr. Precois' claim of excessive force survives summary judgment.

**2. Sojey Mojica**

Ms. Mojica also has a colorable claim for excessive force. She testified that she was struck with a baton on the arm when she sought to prevent police officers from beating her son after he had returned to the car. Ms. Mojica claims some pain for two to three weeks but no permanent

11

damage. Though the injury is not particularly severe, a reasonable juror could find the use of a baton against Ms. Mojica to be disproportionate to the disputed threat she posed. There is no indication she was dangerous. There was no indication she had a weapon. This claim therefore may proceed.

### 3. A.M.

The facts construed in favor of A.M. easily allow his claim for excessive force to proceed. He testified that he was beaten by the police with a baton and kicked repeatedly. At no point was he physically threatening. At no point did he have a weapon. Defendants have also produced no facts indicating they believed him to be armed. A.M. yelled, admittedly, but yelling alone does not justify repeated kicking and beating of an unarmed fifteen year old. A jury could find that there was excessive force used based upon those facts. This claim therefore may also proceed.

## IV. CONCLUSION

For the reasons stated above, Defendants Alexander Blanco, Louis Demondo, and William Dilollo's motions for summary judgment are granted in part and denied in part. An appropriate order accompanies this opinion.

Date: December 10, 2015                             /s Madeline Cox Arleo
                                                    **MADELINE COX ARLEO**
                                                    **UNITED STATES DISTRICT JUDGE**